## Case No. 14,193.

### The TROY.

[Blatchf. Pr. Cas. 246] [1]

District Court, S. D. New York. Oct., 1862.

PRIZE—ILLEGAL TRADE—VIOLATION OF BLOCKADE.

Vessel and cargo condemned as enemy property, attempted to be used in trade by their owner for the benefit of the enemy, and arrested in the act of violating the blockade.

In admiralty.

BETTS, District Judge. This schooner and cargo were seized August 13, 1862, by the United States steamer Kensington, in the Gulf of Mexico, off Sabine Pass, as prize. The crew escaped from the vessel after capture, and could not be sent in as witnesses. The vessel was found to be unseaworthy, and was taken to the Southwest Pass of the Mississippi river, and there left by the captors in charge of the United States authorities. The cargo was shipped to this port for adjudication. On its arrival here, it being made to appear, by the deposition of Robert Barstow, an acting master's mate in the United States navy, that five persons had been found on board of the prize vessel at the time of her apprehension, that none of said persons were sent to this port with the prize property, nor was either of them then here, and that two of them were then in the state of Louisiana, and the other somewhere on the coast of Texas, the court, on motion of the United States attorney, ordered the testimony of Barstow to be taken before the prize commissioners in preparatorio, to be read on the trial, subject to all legal objections. On the 1st of October, 1862, a libel was filed against the captured property. On the 21st of the same month the monition issued thereon was returned to the court by the marshal, with no-

tice of the attachment of the cargo, and, on due proclamation, an order for judgment by default was rendered against all parties in interest not appearing in the suit. No one appearing as claimant in the cause, the United States attorney submitted to the court the preparatory proofs and papers, and prayed judgment.

The vessel was enrolled and registered in the Confederate port of Sabine, Texas, July 3, 1862, to J. D. Kirkpatrick, on his oath that he was owner of her and a citizen of the Confederate States. A bill of sale, dated June 4, 1862, from William Nelson, of Beaumont, Texas, to the said J. D. Kirkpatrick, conveying to the latter the said vessel for the consideration of $900, accompanies the register. There are, also, a manifest of the lading of sixty-five bales of cotton, given at the port of Sabine, August 4, 1862, for Belize or Campeachy; a letter from the owner, Kirkpatrick, dated July 19, 1892, stating the crew and the lading of the vessel, and naming her place of destination as to some port in Honduras Bay or the West India Islands for the sale of her cargo, and her return back to Sabine Pass, or near there, with goods necessary "for our government"; a Rebel passport to the vessel, dated July 19, 1862, to leave Sabine Pass with her cargo; and a permission granted to Kirkpatrick and two others, June 13, 1862, by the provost marshal of Beaumont, Jefferson county, Texas, to visit Vermilion, but not to communicate any facts injurious to the Confederate States. The only witness examined in preparatorio was Mr. Barstow. He proves the capture at the time and place above mentioned, and the facts of the taking possession of the vessel and the transshipment of the cargo to this port, as before stated. Kirkpatrick claimed, on board of the vessel, at the time of her capture, that he owned the vessel and cargo. She was attempting to sail out of Sabine when captured. That port was then under blockade.

These facts are made to appear upon the vessel's papers: (1) She was endeavoring to evade a blockaded port; (2) both vessel and cargo were enemy property, water borne; (3) the cargo was destined to be traded off, in some foreign port, for goods necessary to the use of the Rebel government; and (4) the testimony proves that the avowed and registered owner of the vessel and cargo was on the vessel when the capture was made and the attempt to violate the blockade was in actual execution. This was an act in face of the actual blockade, which is sufficient to stamp the endeavor with culpability, independent of the knowledge of the existence of the blockade by the owner of the prize property, to be implied from its notoriety and from his residence at the place blockaded. A decree is accordingly rendered condemning the prize as enemy property, attempted to be used in trade by its owner for the benefit of the enemy, and arrested in the act of violating the blockade.

---

[1] [Reported by Samuel Blatchford, Esq.]